# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                          )
                          )
                          )
v.                         )          I.D. No.: 1710018609
                          )
                          )
TRENTON HOLMES,            )
                          )
        Defendant.         )

## ORDER

Submitted: October 4, 2018
Decided: October 16, 2018

*Upon Consideration of Defendant's Motion to Suppress,*
**DENIED.**

Gregory R. Babowal, Esquire, Department of Justice. *Attorney for the State.*

Anthony J. Capone, Esquire. *Attorney for Defendant.*

**MEDINILLA, J.**

**AND NOW TO WIT**, this 16th day of October, 2018, upon consideration of the Defendant's Motion to Suppress and the record in this case,[1] it appears to the Court that:

1.      Defendant Trenton Holmes ("Defendant") is charged with Possession with Intent to Deliver Heroin in a Tier 4 Quantity, Possession of Heroin in a Tier 4 Quantity, and Possession of Drug Paraphernalia. Defendant was arrested on October 30, 2017 after an administrative search of Defendant's residence.

2.      On October 30, 2017, Defendant, a homeless probationer, reported for his daily office visit at the Dover Probation and Parole Office (the "Office") as required. Defendant had reported consecutively for the prior ten days that he was residing at 409 Charing Cross Drive in Dover, Delaware (the "Residence"), which was his girlfriend Tiekeyal Singletary's ("Singletary") residence.

3.      During the month of October 2017, Probation Officers and Dover Police had received a tip from a past proven reliable confidential informant ("CI") that Defendant was selling heroin out of the Residence. Detective Joshua Boesenberg ("Boesenberg") reported that the CI told him that an individual known as "Redy," "Reds," or "T" was selling heroin from the Residence. Probation Officer

---

[1] The Court's recitation is based on the facts presented in the motions, exhibits, and on the testimony of the State's and Defendant's witnesses and/or exhibits presented at the suppression hearing held on July 23, 2018 and the evidence entered on October 4, 2018 after this Court granted Defendant's Motion to Re-Open Evidence on September 11, 2018.

2

Daniel Stagg ("Stagg") was familiar with Defendant whose aliases included these names.[2] Boesenberg showed the Informant a photograph of Holmes and the CI identified Defendant as the person selling heroin from the Residence.[3]

4.    On October 30, 2017, Probation Officer Ricky Porter ("Porter") conducted surveillance of the Residence with Dover Police. During this surveillance, Porter observed a black female arrive at the Residence in a 2010 Nissan. This vehicle was later determined to be Defendant's girlfriend Singletary's vehicle and was the same vehicle that Defendant was operating during prior drug related activity on August 23, 2017.[4]

5.    The driver of the vehicle picked up Defendant at the Residence and they drove to an Aldi Grocery Store in Camden, Delaware where they then picked up Singletary and went to the Office in order for Defendant to report for his daily appointment.[5]

6.    When Defendant arrived at the Office, Porter arrested him. He then obtained supervisory approval from Supervisor Robert Hume to conduct an administrative search of the Residence. Porter cited that the administrative search

---

[2] Def.'s Mot. to Suppress, Ex. B at 3.

[3] *Id.*

[4] Def.'s Mot. to Suppress, Ex. A at 2.

[5] *Id.*

was based on a past proven reliable informant's tip that Defendant was living at the Residence and selling heroin from that address, Defendant's claim that he was homeless to his probation officer but was reporting staying at the Residence the past ten days, Defendant's positive urinalysis test for marijuana on September 18, 2017 (42 days prior), and Defendant's then pending drug charges.[6]

7. After he was arrested and handcuffed, Defendant told Porter that he was living at the Residence with Singletary. Porter walked outside to the parking lot and communicated directly with Singletary who was sitting in the parking lot of the Office. She then confirmed Defendant was residing with her and consented to a search of her vehicle. Porter testified also that verbal consent to search her home was obtained prior to heading to the Residence to conduct the search. Further, Porter and other Dover police officers responded to the Residence and Singletary signed a consent search form to search the Residence that was issued by Probation Officer Stagg.[7] Singletary voluntarily followed the officers to her home to allow them to conduct a search. No evidence to the contrary was presented.

8. During the search of the Residence, the record reflects that Stagg discovered 702 bags/4.914 grams of heroin and $263 in cash in the master bedroom.

---

[6] Def.'s Mot. to Suppress, Ex. A at 2. Defendant was arrested for these then pending charges on August 23, 2017. The charges were resolved via plea agreement on January 3, 2018, which included a plea to Possession of a Controlled Substance with an Aggravating Factor.

[7] Def.'s Mot. to Suppress, Ex. D.

4

Officers also found mail addressed to Defendant and male clothing throughout the master bedroom. Defendant waived his rights under *Miranda* and confessed that he lived at the Residence, possessed the bags of heroin, and that he was selling heroin. Porter also searched Defendant's cell phone incident to arrest that showed text messages from Defendant texting about selling heroin.

9. Defendant filed this motion to suppress the evidence from the search of his Residence on June 19, 2018. The State responded on June 29, 2018. A suppression hearing was held on July 23, 2018. Defendant subsequently filed a Motion to Reopen Evidence, which this Court granted. A second supplemental hearing was held on October 4, 2018.

10. At the second supplemental hearing, the State recalled Porter to clarify his prior testimony related to the Administrative Warrant ("Administrative Warrant") he signed on October 30, 2017, and to reconcile the testimony as it relates to the other two reports in this investigation.[8] First, the State identified the Administrative Warrant as an emergency capias, which provides the conditions of probation that had been allegedly violated as a result of these criminal drug-related charges.[9] This is different from the report that formed the basis for the *search*.

---

[8] Def.'s Ex. 1.

[9] *Id.*

11.     In support of the search, the State presented evidence through Porter who clarified that the second document, the "Arrest/Incident Report" dated October 31, 2017 fully sets out the reasons, including those to which he testified, regarding the bases for the administrative search.[10] The last document the Court was asked to consider was the Violation Report ("Violation Report") completed by Probation Officer Anthony Slaughter and submitted on November 1, 2017 that simply confirms the allegation that these new criminal charges of October 30, 2017 formed the basis of the request to violate his probation.[11]

### *Standard of Review*

12.     Under Delaware Superior Court Criminal Rule 12(b)(2), a criminal defendant is permitted to file a motion to suppress evidence prior to trial.[12] When a Defendant moves to suppress evidence collected in a warrantless search, the burden is on the State to prove the search "comported with the rights guaranteed [to the defendant] by the United States Constitution, the Delaware Constitution and Delaware statutory law."[13]     Here, the burden is on the State to prove the

---

[10] *See generally* Def.'s Mot. to Suppress, Ex. A.

[11] Def.'s Ex. 2.

[12] DEL. SUPER. CT. CRIM. R. 12(b)(2).

[13] *State v. Preston*, 2016 WL 5903002, at *2 (Del. Super. Sept. 27, 2016) (quoting *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001)).

constitutionality of the search by a preponderance of the evidence.[14]

### *Discussion*

13. The Fourth Amendment of the United States Constitution and Article I, Section 6 of the Delaware Constitution protect individuals against unreasonable searches and seizures.[15] Citizens have a right to be free from searches into their home absent a warrant or an applicable exception to the Warrant Clause.[16] An applicable exception to the warrant requirement is when a search is conducted "pursuant to a valid consent."[17]

14. Additionally, the "special needs" exception is a recognized exception to the Warrant Clause.[18] A warrantless search of a probationer's home may be included under the "special needs" exception if the search is conducted pursuant to a valid regulatory scheme that meets "reasonable legislative or administrative standards."[19] Probationers "enjoy an abridged Fourth Amendment right to be free

---

[14] *See Preston*, 2016 WL 5903002, at *2.

[15] U.S. CONST. amend. IV; DEL. CONST. art. I, § 6.

[16] *See Payton v. New York*, 445 U.S. 573, 586-87 (1980) (quoting *Coolidge v. New Hampshire*, 703 U.S. 443, 474-75, 477-78 (1971)).

[17] *Scott v. State*, 672 A.2d 550, 552 (Del. 1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 221-22 (1974)).

[18] *See generally Ferguson v. City of Charleston*, 532 U.S. 67 (2001).

[19] *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538 (1967)).

from warrantless searches of their home, as probation is one point on a 'continuum of possible punishments.'"[20] The rehabilitative goals of probation are best served by permitting the State some "degree of impingement upon [the probationer's] privacy."[21]

15. Thus, probationers do not have the same constitutional liberties as ordinary citizens.[22] A lower standard is used for a search of an individual on probation. An administrative search of a probationer's home requires reasonable grounds rather than probable cause.[23] Probation Officers "may conduct searches of individuals under probation and parole supervision" and execute lawful warrants in accordance with the Department of Correction (DOC) procedures.[24]

16. First, the State asserts, and this Court agrees, that Singletary consented to the search of her Residence. When analyzing "whether consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, [it] is a question of fact to be determined from the totality of the circumstances."[25] The

---

[20] *State v. Fax*, 2017 WL 2418275, at *2 (Del. Super. June 2, 2017) (quoting *Griffin*, 483 U.S. at 874).

[21] *Griffin*, 483 U.S. at 875.

[22] *See Donald v. State*, 903 A.2d 315, 318-19 (Del. 2006).

[23] *Id.* at 319.

[24] 11 *Del. C.* § 4321(d).

[25] *Schneckloth*, 412 U.S. at 227; *see also State v. Harris*, 642 A.2d 1242, 1245-46 (Del. Super. 1993).

burden is on the prosecution to prove that the consent was "freely and voluntarily given."[26] The Delaware Supreme Court has stated that "consent by a co-occupant may be sufficient as to other co-occupants."[27] Evidence obtained through a search consented to by a co-occupant "may be used against the other occupant if the consenting party has sufficient control over premises to bind the joint possessor to [her] consent."[28]

17. The State has met its burden that Singletary's consent to search her residence was freely and voluntarily given. While in the parking lot, she provided verbal consent to search her Residence and drove back voluntarily to her Residence so the officers could conduct a search. When Singletary arrived at her home, she signed a consent form to search her Residence, was cooperative with the probation and police officers and permitted the search to be conducted. Therefore, this Court finds that Singletary, as a co-occupant of the Residence, provided valid voluntary consent for the probation officers and Dover police officers to search her Residence. Even if it was determined that the consent was lacking, this Court finds that there existed reasonable grounds for the probation officers to conduct an administrative search of Defendant's Residence.

---

[26] *Schneckloth*, 412 U.S. at 222 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).

[27] *Donald*, 903 A.2d at 320 (citing *Jenkins v. State*, 230 A.2d 262, 262 (Del. 1967), *aff'd on other grounds*, 240 A.2d 146 (Del. 1968), *aff'd*, 395 U.S. 213 (1969)).

[28] *Id.* at 319-20 (citation omitted).

18.     Delaware "law does not permit suspicionless searches of probationer or parolee residences."[29] A probation officer must have "reasonable suspicion" or "reasonable grounds" to conduct an administrative search of a probationer's residence.[30] "'Reasonable suspicion' exists where the 'totality of the circumstances' indicates that the officer had a 'particularized and objective basis' for suspecting legal wrongdoing."[31]

19.     Furthermore, probation officers must perform searches that comply with the procedures of the Department of Correction, which is permitted under 11 *Del. C.* § 4321 and Probation and Parole Procedure 7.19.[32] Procedure 7.19 includes a "Search Checklist" to review the following factors: "(1) [s]ufficient reason to believe the offender possesses contraband[,] (2) [s]ufficient reason to believe the offender is in violation of probation/parole[,] (3) [i]nformation from a reliable informant, indicating offender possesses contraband or is violating the law[,] (4) [i]nformation from the informant is corroborated[,]" and [5] approval from a supervisor.[33] A probation officer need only "substantially comply" with the

---

[29] *Sierra v. State*, 958 A.2d 825, 829 (Del. 2008).

[30] *Donald*, 903 A.2d at 319.

[31] *Sierra*, 958 A.2d at 828 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002); citing *Fuller v. State*, 844 A.2d 290, 291-93 (Del. 2004)).

[32] *See id.* at 828-30; 11 *Del. C.* § 4321(d).

[33] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008).

departmental procedures to satisfy that the search is constitutionally reasonable.[34]

20.     When the decision to search is based on an informant's tip, a probation officer is required "to assess any 'tip' relayed to them and independently determine if a reasonable suspicion exists that would, in the ordinary course of their duties, prompt a search of a probationer's dwelling."[35]  Probation officers are required to assess the reliability of an informant under Procedure 7.19.[36]  Procedure 7.19 requires a probation officer to consider "[i]n evaluating reliability of information, was [1] the information detailed, [2] consistent, [3] was the informant reliable in the past, and [4] consider the reasons why the informant is supplying the information."[37]  When determining if an informant's tip "is sufficient to create a 'reasonable suspicion' of wrongdoing, the 'totality of the circumstances' must be considered."[38]  The information that the informant provides must show that he or she has an actual knowledge of an illegal activity, not just provide observable information.[39]

---

[34] *See Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010) (finding that Delaware law only requires substantial compliance with departmental regulations).

[35] *Culver*, 956 A.2d at 7.

[36] *See id.* at 10.

[37] *Sierra*, 958 A.2d at 831 (citing *Culver*, 956 A.2d at 10-11).

[38] *Id.* at 829 (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)).

[39] *See id.* at 831 (citing *LeGrande v. State*, 947 A.2d 1103, 1111 (Del. 2008); *Culver*, 956 A.2d at 11).

21.    Here, on October 30, 2017, the probation officers and Dover police officers conducted surveillance on the Residence after they received a tip from a past proven reliable informant that Defendant was selling heroin from the Residence.[40] The officers confirmed the identity of the Defendant by showing the CI photographs of the Defendant.  The CI confirmed that he knew him by various names and nicknames that were also known to law enforcement to be connected to Defendant.

22.    The officers further corroborated the informant's tip that Defendant had a connection with the Residence when they observed Defendant leaving the Residence and get into Singletary's vehicle; the same vehicle Defendant was operating during a drug arrest on August 23, 2017.[41]   Under the totality of the circumstances, this Court finds that the CI, deemed past proven reliable, provided a tip that was corroborated as reliable, which created a reasonable suspicion of wrongdoing.

23.    Further, Porter had information unrelated to the past proven reliable informant's tip.  This included that Defendant was claiming homelessness to his probation officer yet was reported staying at the Residence for the last ten days before October 30, 2017.  Added to this calculus was Defendant's positive urinalysis

---

[40] Def.'s Mot. to Suppress, Ex. A at 2.

[41] *Id.*

test for marijuana on September 18, 2017, and Defendant's separate pending drug charges. This information, coupled with the past proven reliable informant's tip that Defendant was selling heroin out of the Residence, provided Porter with reasonable suspicion to conduct the administrative search of the Residence.

24. Defendant relies on *State v. Smith*,[42] *State v. Caulk*,[43] and *State v. Walker*[44] to support its argument that the search was unlawful. This Court finds the authority distinguishable. In *Smith*, the CI stated the defendant was selling drugs from his vehicle but the probation officers performed an administrative search of his home after observing him sitting in his vehicle "without engaging in hand-to-hand transactions."[45] Here, the Residence was the exact location where the CI indicated the drug-related activity was taking place, and the State conducted their surveillance at this location, accordingly.

25. In *Caulk*, the Court denied suppression and found that, although the information provided to the officers was not sufficiently reliable, the "administrative search of the vehicle [was] valid because the officers independently corroborated the informant's tip" and the probation officer had information unrelated to the tip "that

---

[42] 2013 WL 6057814 (Del. Super. Oct. 16, 2013).

[43] 2015 WL 5320165 (Del. Super. Sept. 14, 2015).

[44] 177 A.3d 1235 (Del. Super. 2018).

[45] *Smith*, 2013 WL 6057814, at *3.

13

was sufficient to give him reasonable grounds to believe that Defendant had violated his probation and possessed contraband in the vehicle."[46] Here, no evidence was presented to suggest that the CI was not past proven reliable. Also, Porter and the officers corroborated the reliability of the tip by conducting the requisite surveillance on the Residence, and had yet additional information from which to suspect that Defendant had violated his probation. Lastly, *Walker* is inapplicable to this case, as the holding addresses whether the exclusionary rule applies to violation of probation hearings.[47] There, the underlying suppression issue suggested the CI motives should have been explored. Here, no evidence regarding the motives of the past proven reliable CI was presented, and the officer corroborated the tip.

26. This Court finds that the probation officers had reasonable suspicion to conduct the administrative search of the Residence. The probation officers substantially complied with Procedure 7.19 when they obtained information from a past proven reliable informant, they corroborated the information from the informant by conducting surveillance of Defendant at the Residence, and Porter obtained the appropriate approval from his Supervisor prior to conducting the administrative search. The State has met its burden that the search complied with the Fourth Amendment of the United States Constitution, Article I, Section 6 of the Delaware

---

[46] *Caulk*, 2015 WL 5320165, at *4.

[47] *Walker*, 177 A.3d at 1244.

14

Constitution, and Delaware statutory law.

27. Any clarification provided at the supplemental hearing on October 4, 2018 does not change the result of this ruling. There, the State clarified the difference between the Administrative Warrant, the Arrest/Incident Report, and the Violation Report. The Arrest/Incident Report outlines the reasons for the administrative search of Defendant's Residence, which differs from the reasons provided in the Administrative Warrant and Violation Report for the alleged violation of the conditions of supervision. The Administrative Warrant and Violation Report both discuss the new criminal charges from October 30, 2017 that allegedly violated a condition of Defendant's supervision.[48] These documents properly state an alleged violation of supervision based on the lawful administrative search of Defendant's residence.

For these reasons, the evidence seized from Defendant will not be suppressed as fruits of an unlawful search and seizure. Defendant's Motion to Suppress is **DENIED**.

　　**IT IS SO ORDERED**.

Vívian L. Medinilla
Judge

---

[48] *See* Def.'s Ex. 1; Def.'s Ex. 2.