**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | |
| | ) | I.D. No. 2211007276 |
| DAQUAN WATSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Submitted: May 18, 2023
Decided: June 27, 2023

*Upon Defendant's Motion to Suppress*
**DENIED**

Lindsay A. Taylor, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State.*

Regina E. Gray, Esquire, Office of Defense Services, Dover, Delaware, *Attorney for Defendant.*

**Primos, J**.

1

Before the Court is a motion to suppress filed by Defendant Daquan Watson (hereinafter "Defendant") seeking suppression of evidence obtained in the course of two warrantless administrative searches conducted by probation officers. The Court held a suppression hearing on May 18, 2023, at which the State presented testimony from Probation and Parole Officers Ricky Porter (hereinafter "Officer Porter") and Eric Larsen (hereinafter "Officer Larsen") and Probation Supervisor Joel Duquette (hereinafter "Officer Duquette"). For the reasons that follow, Defendant's motion to suppress is **DENIED**.

### FINDINGS OF FACT[1]

1. In November 2022, Officer Porter received tips from two confidential informants[2] alleging that Defendant, while serving a sentence of probation, was in possession of a firearm and dealing drugs.[3] Specifically, the informants indicated that Defendant was carrying a black semi-automatic pistol and that he was selling cocaine and heroin in downtown Dover.[4] The informants also said that Defendant was packaging heroin and cocaine at an unspecified residence in downtown Dover.[5] Based on his years of experience as a probation officer involved in Operation Safe Streets, Officer Porter understood "downtown Dover" to refer to a specific three-to-four block area which he described as "high-drug."[6]

---

[1] "At a suppression hearing, the Court sits as the finder of fact and evaluates the credibility of the witnesses." *State v. Brown*, 287 A.3d 1222, 1230 (Del. Super. 2023).
[2] The incident report, written by Officer Larsen, mentions only one informant. *See* Def. Ex. 1. Officer Larsen testified that he personally dealt directly only with one informant. Tr. of Suppression H'rg [hereinafter "H'rg Tr."] at 38:4–5. Officer Porter testified that he spoke with two informants and did not know why Officer Larsen only mentioned one in the report. *Id.* at 22:12–13, 18.
[3] Hr'g Tr. at 7:17–21.
[4] *Id.* at 8:21–9:5.
[5] *Id.*
[6] *Id.* at 11:7–10.

2. The informants identified Defendant by a DELJIS photograph, provided his phone number, and stated that he drove a gray Infiniti.[7] Officer Porter considered both informants to be past-proven reliable because they had previously provided tips that led to arrests related to drug and firearm offenses.[8] The informants received monetary payment for information that was proven accurate or led to arrests.[9]

3. The officers corroborated the tips in several ways. They verified that the phone number provided matched Defendant's phone number on file in the Delaware Automated Correction System (DACS) probation database.[10] In addition, Defendant's supervising probation officer was familiar with Defendant's gray Infiniti, and Officer Porter had seen Defendant driving it several days earlier.[11] The vehicle was especially recognizable because it had bullet holes in the door.[12] Finally, the officers checked the license plate number with Dover's License Plate Reader system and confirmed that the gray Infiniti had been driven in the downtown Dover area multiple times daily over the course of the month of November.[13]

4. On November 17, 2022, an undercover police officer spotted Defendant's gray Infiniti parked in downtown Dover.[14] An Operation Safe Streets unit, including Officers Porter and Larsen, responded. Before officers contacted him, however, Defendant "went mobile" and was followed to his residence.[15] Officers Porter and Larsen believed that Defendant was driving on a suspended

---

[7] *Id.*
[8] *Id.* at 8:3–5; 27:3–6.
[9] *Id.* at 8:10–11, 27:9–12.
[10] *Id.* at 9:4–7.
[11] *Id.* at 9:12–16.
[12] *Id.* at 9:18–20.
[13] *See* Def. Ex. 1; Hr'g Tr. at 37:3–7.
[14] Hr.'g Tr. at 11:21–23.
[15] *Id.* at 12:11–21.

license, and Officer Larsen confirmed this fact via DELJIS on the way to the residence.[16]

5.      While en route to the residence, Officer Porter called Officer Duquette and obtained permission for an administrative search of Defendant's vehicle (the Infiniti) and his person.[17]  Officer Porter and Officer Duquette reviewed the four decision factors provided for in Probation and Parole Procedure 7.19 (hereinafter "Procedure 7.19") and went over a pre-search checklist.[18]  Officer Porter told Officer Duquette the substance of the tips and that Defendant was on probation for a firearms offense.[19]  He  explained that the tips were corroborated by the phone number and DELJIS identification, the accurate description of Defendant's vehicle, and the observation of Defendant in downtown Dover,[20] but may have omitted that the officers had used the Dover License Plate Reader to verify Defendant's daily trips to downtown Dover.[21]

6.      Defendant was stopped outside of the residence and officers searched his vehicle and his person.  In the vehicle, they found two mason jars with marijuana residue, plastic bags, and a digital scale,[22] which in Officer Porter's experience are all indicative of drug dealing.[23]  The search of Defendant's person also yielded 17 bags of suspected heroin (which later turned out to be fentanyl upon testing).[24]

---

[16] *Id.* at 38:15–22.
[17] Officer Larsen wrote in his report only that permission was obtained to search the vehicle.  Def. Ex. 1.  Officer Porter's unrebutted testimony, however, was that he obtained permission to search both the vehicle and Defendant's person.  Hr'g Tr. at 18:23–19:2 ("I received approval from my supervisor to search Daquan Watson and the vehicle he was operating . . . .").
[18] Hr'g Tr. at 13:12–22; State Ex. 1.
[19] Hr'g Tr. at 16:10–17:2, 17:6–7.
[20] *Id.* at 18:8–12.
[21] Officer Porter testified that he could not recall if the license plate reader results were specifically discussed on the call.  *Id.* at 18:16–18.
[22] *Id.* at 19:3–6.
[23] *Id.* at 19:16–20.
[24] *Id.* at 19:9–12, 39:17–18.

7.      Officer Porter called Officer Duquette again and told him what was found in the initial search, and Officer Duquette granted permission to conduct a second administrative search, this time of Defendant's bedroom.[25]  Officer Duquette based his decision both on the evidence discussed in the first call and the new information provided about the results of the initial search.[26]

## LEGAL STANDARD

8.      At a suppression hearing challenging a warrantless search, the State bears the burden of proving by a preponderance of the evidence that it complied with the United States Constitution, the Delaware Constitution, and any applicable statutes.[27]

9.      "By agreeing to probation, individuals sacrifice some of their privacy rights in exchange for freedom from incarceration."[28]  A probation officer needs only "a reasonable suspicion or reasonable grounds to justify an administrative search of a residence or car."[29]  Delaware courts consider probation officers "to have acted reasonably so long as they substantially comply with Delaware Department of Corrections [sic] regulations."[30]

10.     Under Procedure 7.19, a probation officer must hold a case conference with the officer's supervisor and review the following four decision factors in order to obtain permission to conduct an administrative search:

(1) Whether there is sufficient reason to believe that the offender possesses contraband;

---

[25] *Id.* at 21:3–9; 21:15–17.  Officer Porter had already spoken with Defendant's aunt, the owner of the residence, and she had given him permission to enter and had told him which room was Defendant's.  *Id.* at 20:1–16.

[26] *Id.* at 32:18–20.

[27] *Brown*, 287 A.3d 1229–30.

[28] *Sierra v. State*, 958 A.2d 825, 832 (Del. 2008) (citing *Griffin v. Wisconsin,* 483 U.S. 868, 874 (1987)).

[29] *Murray v. State*, 45 A.3d 670, 678 (Del. 2012).

[30] *Id.*

(2) Whether there is sufficient reason to believe that the offender is in violation of probation or parole;

(3) Whether there is information from a reliable informant indicating that the offender possesses contraband or is violating the law; and

(4) Whether the information from the informant has been corroborated.[31]

In considering the reliability of an informant, the probation officer must also consider (1) the detail and consistency of the information; (2) the reliability of the informant in the past; and (3) any reasons why the informant would supply the information.[32]

11.     Procedure 7.19 was promulgated pursuant to the Department of Correction's statutory authority under 11 *Del. C.* § 4321, and lack of substantial compliance with the regulation is a statutory violation warranting exclusion of evidence.[33]  "Administrative searches must be supported by reasonable suspicion to be in compliance with Procedure 7.19."[34]

## ANALYSIS

12.     At the suppression hearing, Defendant clarified that his primary argument is that the informants' tips were not sufficiently corroborated under the fourth prong of the Procedure 7.19 analysis.[35]

---

[31] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008); *Gibson v. State*, 135 A.3d 78, 2016 WL 943842, at *2 (Del. 2016) (TABLE); *Sierra*, 958 A.2d at 829.

[32] *Gibson*, 2016 WL 943842, at *2; *Culver*, 956 A.2d at 11.

[33] *See Culver*, 956 A.2d at 7 n.1 ("Because we find that probation officers violated their clear statutory mandate, we do not reach any constitutional questions."); *see also Walker v. State*, 205 A.3d 823, 826 (Del. 2019) (explaining that failure to determine reasonable suspicion in accordance with Procedure 7.19 is a statutory violation apart from the constitutional argument warranting suppression at a violation of probation hearing); *Lloyd v. State*, 292 A.3d 100, 105 (Del. 2023) ("Delaware statutory law governs the exercise of the power of probation officers to search and arrest probationers without a warrant.").

[34] *Lloyd*, 292 A.3d at 106.

[35] *See* H'rg Tr. at 4:17–5:4. It is indisputable that the facts alleged in the tips, if true, were sufficient to support the first two decision factors, i.e., (1) that Defendant possessed contraband (illegal narcotics and a firearm as a person prohibited) and (2) that he was in violation of his probation.

6

13. While the third prong of Procedure 7.19 is not the primary focus of Defendant's argument, the Court finds first that the tips provided to Officer Porter were reliable. "An informant is 'past proven reliable,' if the informant has given reliable information in the past."[36] Officer Porter had personal knowledge that both informants had supplied information leading to arrests in the past and that they each had a financial incentive to provide accurate information. Moreover, the two tips were consistent with one another and detailed in most respects (save for not identifying the specific residence that Defendant used to package heroin).

14. Turning to the fourth prong, prior to obtaining permission for the first administrative search, the officers corroborated both the personal and vehicle information relayed by the informants. They also confirmed that Defendant's vehicle was regularly frequenting downtown Dover. Given Officer Porter's knowledge of the area's reputation for drug activity and the informants' tips, this information was sufficient to raise a reasonable suspicion that contraband or evidence would be found in the vehicle and on Defendant's person.[37] Officer Porter relayed and discussed most of this information with Officer Duquette through a phone call before the search was approved, thus substantially complying with Procedure 7.19.[38] Even if he was unaware of the license plate reader results, Officer Duquette knew that the informants were past-proven reliable, that the personal

---

[36] *Shepeard v. State*, 133 A.3d 204, 2016 WL 690544, at *2 (Del. 2016) (TABLE).

[37] *See Fuller v. State*, 844 A.2d 290, 292–93 (Del. 2004) ("Officer DuPont had received information from a past proven reliable informant that a probationer of a certain description was selling drugs in a particular area and driving a vehicle of a certain description. . . . When he located a vehicle and its driver matching the description in the general area described in the tip, and then confirmed that the car was registered to a probationer, the informant's tip was corroborated."); *see also Woody v. State*, 765 A.2d 1257, 1265 (Del. 2001) (explaining that an area's "high crime nature" is a "'relevant contextual consideration' in a reasonable suspicion analysis" (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))).

[38] *Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010) (explaining that a telephonic case conference in which the decision factors are discussed and rationally assessed substantially complies with Procedure 7.19).

information was corroborated, and that Defendant was seen driving the same vehicle described by the informants in downtown Dover prior to granting approval for the search.

15. The second administrative search (the search of Defendant's bedroom inside the residence) occurred only after the officers found suspected heroin and other indicia of drug dealing in the first search. That first search occurred just outside of Defendant's residence, further corroborating the allegation that Defendant was packaging heroin in a residence in downtown Dover. Thus, by the time the officers acted on the less detailed portion of the tip (regarding drug packaging at a residence), it had been corroborated with specific evidence supporting the allegations of criminal activity.[39] In accordance with Procedure 7.19, Officer Porter discussed this new information with Officer Duquette via phone and obtained permission to conduct a second administrative search.

16. Defendant relies primarily on the Delaware Supreme Court's decision in *Gibson v. State* to argue for suppression.[40] *Gibson*, however, supports the opposite conclusion. In that case, the Supreme Court affirmed the trial court's denial of a probationer's motion to suppress on facts closely analogous to this case. In *Gibson*, the source of the tip was a "past, reliable CI" whose previous tips had led to arrests.[41] The informant in *Gibson* alleged that the probationer possessed a firearm and drugs.[42] He "relayed specific personal details about Gibson including Gibson's full name, probation level, curfew, and the reason why he was on probation."[43] By way of corroboration, the probation officer confirmed that "the personal information

---

[39] *Cf. Lloyd*, 292 A.3d at 110 (holding that reasonable suspicion existed to search a probationer's home after heroin was found during a search of his person).
[40] 135 A.3d 78, 2016 WL 943842 (Del. 2016) (TABLE).
[41] *Id.* at *2.
[42] *Id.*
[43] *Id.*

was accurate."[44]  Notably, there is no indication in *Gibson* that the officers independently corroborated the firearm or drug allegations, including the specific allegation that Gibson was stashing the contraband in his car just prior to his 8:00 p.m. curfew.[45]  Likewise, in this case, probation officers acted on information from past-proven reliable informants, whose tips had led to prior arrests, and corroborated the probationer's personal information prior to conducting any search.

## CONCLUSION

As explained above, the tips from these two past-proven reliable informants were sufficiently corroborated to justify the initial search of Defendant's vehicle and person, and the fruits of the first search provided sufficient corroboration to justify the search of Defendant's home.  Officer Porter substantially complied with Procedure 7.19 by conducting a telephonic conference and discussing the decision factors with his supervisor prior to each search.

Wherefore, for the foregoing reasons, Defendant's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls
*Via Email*
oc:  Prothonotary
cc:  Counsel of Record

---

[44] *Id.*
[45] *Id.*

9