IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHE RON SHEPEARD, | § | |
| | § | No. 348, 2015 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID No. 1310014773 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: February 10, 2016
Decided: February 18, 2016

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 18th day of February, 2016, it appears to the Court that:

(1)     On October 23, 2013, with permission from his supervisor, probation officer Daniel Collins executed an administrative search of probationer Che Ron Shepeard's house.  Officer Collins found Shepeard in possession of crack cocaine and wearing a fixed blade knife around his neck.  Before trial, Shepeard moved to suppress the evidence discovered during the search on the ground that the officer lacked reasonable suspicion to search his home.  The Superior Court denied the motion, ruling that the information Officer Collins received from a confidential informant created reasonable suspicion to search the premises.  After a non-jury trial, the court found Shepeard guilty of drug dealing and various weapons crimes.

(2)  Shepeard argues on appeal that there was no reasonable suspicion for the search because Officer Collins failed to independently assess the reliability of the informant or to corroborate the tip the informant provided.  After a careful review of the record, we find that Officer Collins correctly followed the mandates of Probation and Parole Procedure 7.19 and had reasonable suspicion to search Shepeard's home.  Therefore, we affirm.

(3)  A confidential informant contacted probation officer Daniel Collins with a tip about probationer Che Ron Shepeard.  The informant told Officer Collins that he had been in "Che Ball's" home two weeks prior and that Che Ball was actively dealing crack cocaine and had an AK-47 rifle underneath his bed.  The informant described the internal layout of the home and Shepeard's bedroom, the accuracy of which was later confirmed.  Officer Collins knew Che Ball to be Shepeard.  He showed a photograph of Shepeard to the informant, and the informant confirmed that Che Ball was Shepeard.  Additionally, while riding in Officer Collins' vehicle, the informant correctly identified Shepeard's house and car.

(4)  Officer Collins contacted his supervisor for permission to perform an administrative search of the house.  The two reviewed the probation search checklist and determined that the information provided by the tip, in combination with Shepeard's history, provided an adequate basis for an administrative search.

Officer Collins characterized the informant as "past proven" because he had worked with him before.[1] The informant had also contacted Officer Collins of his own volition rather than in an attempt to work off a charge. Officer Collins had "inadvertently helped [the informant] out of a jam, and [the informant] took it upon [himself] to help [Officer Collins] with some information."[2] With assistance of other officers, Officer Collins conducted a search. The officers found Shepeard with crack cocaine and wearing a fixed blade knife around his neck.

(5) Shepeard filed a motion to suppress, which the Superior Court denied. The Superior Court held a non-jury trial where the parties submitted a stipulation of facts to the court. The court found Shepeard guilty of drug dealing (cocaine),[3] possession of a deadly weapon during the commission of a felony,[4] possession of a deadly weapon by a person prohibited,[5] and carrying a concealed deadly weapon.[6] The court sentenced Shepeard as a habitual offender solely for the offense of drug dealing to three years at level V supervision. He was also sentenced to two years at level V for possession of a deadly weapon during the commission of a felony and possession of a deadly weapon by a person prohibited, and two years of

---

[1] App to Opening Br. at 27-28 (Supp. Hr'g Test. of Officer Collins).
[2] *Id.*
[3] 16 *Del. C.* § 4752.
[4] 11 *Del. C.* § 1447.
[5] 11 *Del. C.* § 1448.
[6] 11 *Del .C.* § 1442.

probation for the carrying a concealed deadly weapon count. This appeal followed.

(6) Shepeard argues that the Superior Court abused its discretion by denying his motion to suppress because the officers lacked reasonable suspicion to search his home. He argues Officer Collins did not corroborate the information the confidential informant provided him, and did not assess the confidential informant's reliability. We review the Superior Court's denial of a motion to suppress following an evidentiary hearing for abuse of discretion,[7] and review questions of law *de novo*.[8]

(7) In *Griffin v. Wisconsin*,[9] the United States Supreme Court held that a state's operation of a probation system "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements" for searches under the Fourth Amendment.[10] Those special needs do not, however, allow suspicionless searches of probationer or parolee

---

[7] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008).
[8] *Id.*
[9] 483 U.S. 868 (1987); *see also Samson v. California*, 547 U.S. 843, 856-57 (2006) (holding that the Fourth Amendment does not prohibit suspicionless searches of parolees if the search is not "arbitrary, capricious or harassing").
[10] *Griffin*, 483 U.S. at 873-74; *see also Donald v. State*, 903 A.2d 315, 319 (Del. 2006) ("The special nature of probationary supervision justifies a departure from the usual warrant and probable cause requirements for searches, but a search of a probationer's home must be reasonable.").

residences.[11]   A warrantless search of a probationer's residence requires "reasonable grounds" or "reasonable suspicion" for the search.[12]

(8)   The Delaware Code, 11 *Del. C.* § 4321, grants probation and parole officers statutory authority to effect searches of the individuals they supervise. Under § 4321, the Department of Corrections has adopted regulations governing warrantless searches of probationers.   Probation and Parole Procedure 7.19 requires "probation officers [to] rationally assess the facts made known to them before reaching the critical conclusion that there is a reasonable basis to search a probationer's dwelling."[13]

(9)   In addition to these requirements, probation officers must assess the reliability of their informants.[14]  Probation and Parole Procedure 7.19 requires the officer to assess whether the information the informant supplied was detailed and consistent, whether the informant was reliable in the past, and to consider the reason why the informant is supplying information.[15]  An informant is "past proven reliable," if the informant has given reliable information in the past.[16]

---

[11] *Sierra v. State*, 958 A.2d 825, 829 (Del. 2008).
[12] *Id*. at 828.
[13] *Culver*, 956 A.2d at 11.
[14] *Id*.
[15] *Id*. (citing Probation and Parole Procedure 7.19(VI)(E)(3)(b)).
[16] *See, e.g.*, *Thomas v. State*, 8 A.3d 1195, 1198 (Del. 2010) (reasonable suspicion for *Terry* stop found when information was provided from a reliable informant); *State v. Jones*, 2002 WL 31814516, at *2 (Del. Super. Nov. 25, 2002) (informant past proven reliable because he had previously given accurate information in the past); *see also Adams v. Williams*, 407 U.S. 143, 146-47 (1972) (relying on four factors to show that the officer had acted on reasonable suspicion

(10)   Shepeard primarily challenges Officer Collins's reliability assessment. He cites *Culver v. State*[17] and *Sierra v. State*[18] to argue that there were insufficient facts relayed by the informant to Officer Collins to create the necessary reasonable suspicion for the administrative search of his home.

(11)   In *Culver*, the police received an anonymous tip from an unknown caller with no past proven reliability.[19]   The "tip" offered was the informant's speculation that the defendant dealt drugs, which was based on the volume of cars that would come to the defendant's residence and leave within minutes.   This Court held that the tip was insufficient because the anonymous tipster had no first-hand knowledge or contact with the defendant that would support his conclusion. The "tip" was merely a conclusory opinion based on facts observable from the street.

(12)   In *Sierra*, a probation officer received information from an unidentified employee of the Department of Justice ("DOJ") that the defendant had drugs in his home.[20]   The DOJ employee received the information from a confidential informant.   The probation officer did not have information about the

___

because the tip contained sufficient indicia of reliability: (1) the officer knew the informant, (2) the informant had provided the officer information in the past, (3) the informant came forward personally and gave information that was verifiable immediately at the scene, and (4) the informant may have been subject to arrest if the tip proved to be incorrect).
[17] 956 A.2d 5 (Del. 2008).
[18] 958 A.2d 825 (Del. 2008).
[19] *Culver*, 956 A.2d at 8.
[20] *Sierra*, 958 A.2d at 827.

informant's reliability or basis of knowledge. Instead, he simply accepted the DOJ employee's word that the informant was credible. This Court held that the information the probation officer relied on was insufficient. We explained that it was error for the probation officer to simply accept the DOJ employee's vouching for the anonymous caller. Instead, the probation officer must have enough information to "independently and objectively assess the reasonableness of the inferences to be drawn from the caller's tip."[21]

(13) Shepeard's case is distinguishable from *Culver* and *Sierra*. First, and most critically, the informants in *Culver* and *Sierra* were anonymous and completely unknown to the probation officer who executed the search. Here, Officer Collins knew the informant from past dealings. This is not the situation where another police officer or probation officer was vouching for an anonymous informant's reliability. Officer Collins himself knew the informant to be reliable in the past.

(14) The information was also sufficiently detailed and consistent. The informant not only knew where Shepeard lived, but had been inside the house and was able to describe its internal layout. Although Shepeard contends that all the houses on the block looked the same inside, the informant correctly identified Shepeard's bedroom. This information was later corroborated. The informant also

---

[21] *Id*. at 832 (citing *Culver*, 956 A.2d at 13).

7

described Shepeard's bedroom and said he saw a rifle under the bed, and that Shepeard was actively selling crack cocaine. Though no rifle was found, crack cocaine was. Further, the informant identified Shepeard by his street name "Che Ball" and correctly identified his photo.

(15) Finally, there was no particularized motive for the informant to lie. The informant was not obligated to help the officer and was not trying to work off a charge. Instead, the informant contacted the officer of his own volition and provided information because he wanted to help the officer.

(16) Officer Collins fully complied with Probation and Parole Procedure 7.19. The informant supplied detailed first-hand knowledge about Shepeard that Officer Collins corroborated. Officer Collins knew the informant to be past proven reliable and found that the informant had no motive to lie. These facts, along with the account of criminal activity, gave Officer Collins reasonable suspicion to search Shepeard's home, which Officer Collins's supervisor approved. Accordingly, the Superior Court did not abuse its discretion by denying Shepeard's motion to suppress the evidence seized during the search of Shepeard's home.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

8